Ana B. Alba, Esq.
ALBA LAW FIRM, P.C.
110 Wall Street, 11th Floor
New York, NY  10005-3817
(212) 859-5080
*Attorneys for Plaintiffs*

Jason A. Shear, Esq.
BRENT & SHEAR, P.C.
3957 Main Street
Buffalo, NY  14226-3401
(716) 831-1111
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
-----------------------------------------X
```

| | |
|---|---|
| TAWANA BLEDSOE and<br>SCOTT HIGGINS, | : **DOCUMENT FILED**<br>: **ELECTRONICALLY**<br>: |
| Plaintiffs, | : Civil Action No.  2:11-cv-02814<br>: (KSH) (PS) |
| -against- | :<br>: |
| FORSTER, GARBUS &<br>GARBUS and GLENN S.<br>GARBUS, ESQ., | :<br>:<br>:<br>: |
| Defendants. | :<br>:<br>:<br>:<br>:<br>: |

```
-----------------------------------------X
```

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

PROCEDURAL HISTORY ......................................................................................2

STATEMENT OF FACTS ........................................................................................4

LEGAL ARGUMENT ..............................................................................................5

I. SUMMARY JUDGMENT STANDARD. ...........................................................5

II. THE STIPULATIONS OF SETTLMENT IN LIEU OF JUDGMENT WERE MISLEADING AND DECEPTIVE BECAUSE THEY CONFUSED PLAINTIFFS AS TO THEIR LEGAL RIGHTS AND VIOLATE THE FDCPA. .................................7

   A.  The Least Sophisticated Debtor Standard ........................................................6

   B.  Plaintiffs Feared that a Judgment Would be Immediately Entered in Court Due to the Stipulations of Settlement in Lieu of Judgment ..................................8

   C.  The Title "Stipulations of Settlement in Lieu of Judgment" Confuses and Causes the Least Sophisticated Consumer to Believe a Final Judgment is Imminent; Does Not Give the Impression that a Payment Plan Has Been Offered; and Made Plaintiff Bledsoe Believe that Disputing the State Court Debt Collection was Useless ....................................................................................................................10

III.  THE INTENT OF THE FAIR DEBT COLLECTION PRACTICES ACT. ...........................................................................................12

IV.  UPON APPLICATION OF THE FDCPA DEFINITIONS AND CASE LAW, PLAINTIFF SCOTT HIGGINS HAS STANDING TO SUE AS A CONSUMER BECAUSE HE IS PLAINTIFF TAWANA BLEDSOE'S HUSBAND .......................14

V.  DEFENDANTS DID NOT REVIEW THE DEBT BEFORE DEMANDING PAYMENT; THEREFORE, THE COMMUNICATION WAS FALSE AND MISLEADING VIOLATION UNDER THE FDCPA. ...........................................16

VI.  DEFENDANTS NEVER SENT THE VERIFICATION RIGHTS NOTICE IN VIOLATION OF 15 U.S.C. § 1692g. ......................................................................17

CONCLUSION ........................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**

Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521 (E.D. Pa. 1996).. 8, 9

Brown v. Card Serv. Ctr., 464 F.3d 450 (3d Cir. 2006) ....................................... 7, 8

Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993)...................................... 18

Cole v. Toll, No. 07-0590, 2007 WL 4105382 (E.D. Pa. Nov. 16, 2007).............. 16

Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360 (2d Cir. 2005) ........... 19

Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985) ................................ 14

Macarz v. Transworld Sys., Inc., 193 F.R.D. 46 (D. Conn. 2000) ........................... 9

Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326 (D. N.J. 2009)................. 6

Wenrich v. Cole, No. 00-2588, 2001 WL 4994 (E.D. Pa. Dec. 22, 2000)............. 16

Yentin v. Michaels, Louis & Assoc., Inc., No. 11-0088, 2011 WL 4104675 (E.D.
    Pa. Sept. 15, 2011) .................................................................... 15,16, 17

**Statutes**

15 U.S.C. § 1692 et seq. (2006) ................................................................ 1

15 U.S.C. § 1692(a) (2012)..................................................................... 13

15 U.S.C. § 1692(b) (2012)..................................................................... 13

15 U.S.C. § 1692c(d) (2012) ............................................................... 14, 15

15 U.S.C. § 1692e (2012).................................................................. passim

15 U.S.C. § 1692g(a) (2012)................................................................... 17

15 U.S.C. § 1692k(a) (2012).................................................................. 14

15 U.S.C. § 45 (2006) ....................................................................... 13

**Other Authorities**

S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695
    ............................................................................................ 12

**Rules**

Fed. R. Civ. P. 56 (2012) ......................................................................... 6

Fed. R. Civ. P. 56(c) (2012)...................................................................... 6

# INTRODUCTION

This lawsuit is brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (2006) (hereinafter "FDCPA"). Plaintiffs Tawana Bledsoe and Scott Higgins are individual consumers who have sued for damages under the FDCPA for violations committed by Defendants Forster, Garbus & Garbus and Glenn S. Garbus, Esq. (collectively "Defendants") during the collection of an allegedly owed consumer debt action filed in the Superior Court of New Jersey during November 2010 (the "State Court Debt Collection Action"). Defendants moved for summary judgment. This memorandum is submitted in opposition to Defendants' motion for summary judgment.

There are several genuine issues of material facts in dispute. Defendants' summary judgment motion fails because: (1) the Stipulations of Settlement in Lieu of Judgment sent by Defendants was misleading and deceptive under the FDCPA's least sophisticated consumer[1] standard since the precise language of "In Lieu of Judgment" was used to confuse, intimidate, and allow Defendants to take advantage of Plaintiffs' naiveté as pro se litigants; (2) the title "Stipulation of Settlement in Lieu of Judgment" is capable of two different meanings because a

---

[1] The terms "least sophisticated consumer" and "least sophisticated debtor" are used interchangeably.

1

consumer would think the word "judgment" means a final monetary judgment will be entered against them in court and not that a payment plan was offered; (3) Plaintiff Tawana Bledsoe testified during her deposition that she was confused during the State Court Debt Collection Action and stated she went to Superior Court two times thereby demonstrating that she was seriously concerned and fearful of having an imminent judgment entered against her; (4) contrary to Defendants' allegations Plaintiffs did provide during discovery the mass produced letter Plaintiff Bledsoe received during the State Court Debt Collection Action; and (5) based upon both case law and the FDCPA definitions, Plaintiff Scott Higgins has standing to sue as a consumer for Defendants' FDCPA violations.

## <u>PROCEDURAL HISTORY</u>

The State Court Debt Collection Action entitled, LVNV Funding, LLC A/P/O Household Bank (SB), N.A. v. Tawana Bledsoe, Docket number DC-036988-10 was filed on or about November 24, 2010 in the Superior Court of New Jersey, Law Division – Special Civil Part, Bergen County. Tawana Bledsoe was the named defendant in this action. Ms. Bledsoe filed an Answer pro se and requested debt validation on or about December 15, 2010. Ms. Bledsoe never received any response to her debt validation request. The State Court Debt Collection Action was dismissed with prejudice due to LVNV Funding, LLC's failure to appear on the March 14, 2011 trial date.

2

Plaintiffs filed the instant Complaint in The United States District Court for the District of New Jersey on May 17, 2011.[2] (ECF Doc. #1). Defendants filed their Answer on July 15, 2011.[3] (ECF Doc. #6). On January 4, 2012, the Honorable Patty Shwartz, U.S.M.J. held a telephone conference and ordered Defendants to produce documents that embody communications to and from the Plaintiffs by January 18, 2012. (ECF Doc. #10). Defendants never produced any such documents. Plaintiffs were deposed on February 1, 2012. Discovery was completed on February 2, 2012. Plaintiffs provided paper discovery. Defendants did not provide any discovery, but instead filed their objections to all discovery requests. No experts were identified by either party. The deadline for all dispositive motions was February 24, 2012 under the Pretrial Scheduling Order dated October 18, 2011 issued by the Honorable Patty Shwartz, U.S.M.J. (ECF Doc. #8). Defendants filed the instant motion for Summary Judgment on February 24, 2012. (ECF Doc. #11). Plaintiffs requested an automatic extension of the time to respond to Defendants' Summary Judgment Motion on March 4, 2012. (ECF Doc. #12). The current deadline for Plaintiffs opposition to the Summary Judgment Motion is March 19, 2012. Defendants' reply is due on March 26, 2012

---

[2] Defendants stated in their Summary Judgment motion that the instant Complaint was filed on May 17, 2010. This was a typographical error.

[3] Defendants stated in their Summary Judgment motion that the Answer to the instant Complaint was filed on July 15, 2010. This was a typographical error.

and the motion date is set for April 2, 2012. A final pretrial conference is scheduled on April 26, 2012 at 12:30 p.m.

## STATEMENT OF FACTS

On or about November 24, 2010, Tawana Higgins was sued in the Superior Court of New Jersey, Law Division – Special Civil Part for an allegedly owed consumer debt. Tawana Higgins and Scott Higgins were living together and engaged to be married at that time. They subsequently got married on February 12, 2011. Prior to and after the wedding, both maintained joint bank accounts.

Ms. Bledsoe was confused as to why she had been sued since she had never heard of LVNV Funding, LLC. On or about December 15, 2010, Ms. Bledsoe wrote a letter to Forster, Garbus & Garbus requesting debt validation. Instead of a reply to that letter she received a cover letter with two (2) Stipulations of Settlement in Lieu of Judgment approximately on January 4, 2011. Ms. Bledsoe did not sign either stipulation. Both Tawana Bledsoe and Scott Higgins went to court for the State Court Debt Collection Action two times.

Both Ms. Bledsoe and Mr. Higgins suffered anxiety and nausea due to the stress of the State Court Debt Collection Action and feared having their finances ruined. They were also in the middle of planning their upcoming wedding. Neither sought medical treatment. The State Court Debt Collection Action was

4

dismissed on or about March 14, 2011.  After the dismissal, they hired Jason A. Shear, Esq. as their attorney in March 2011.  By this time Ms. Bledsoe and Mr. Higgins had been married one month prior to the dismissal.

During her deposition, Ms. Bledsoe testified that she was confused as to why she was being sued, was confused by the Stipulations of Settlement in Lieu of Judgment she received from Defendants, and knew she and her husband needed help during the State Court Debt Collection Action.  Mr. Higgins testified during his deposition, that he lost work opportunities and income due to dealing with the State Court Debt Collection Action.  Mr. Higgins also testified that Jason A. Shear, Esq. was hired as their attorneys after the State Court Debt Collection Action was dismissed in March and that Ana B. Alba, Esq. became involved in the case thereafter.

## LEGAL ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD.

Summary judgment may be granted pursuant to Rule 56(d) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 329 (D. N.J. 2009) (citing Fed. R.

Civ. P. 56(c) (2012)).  The Court has a duty to view facts in the light most

beneficial to the non-movant and is required to conclude all reasonable inferences

supporting the non-movant's claims.  Parker, 650 F. Supp. 2d at 329.  The Court

cannot determine credibility nor is allowed to weigh evidence.  Id.  Also, the Court

cannot grant the movant's summary judgment motion if there is sufficient evidence

to permit a reasonable jury to grant a verdict for the non-movant, or if the

disagreement concerning the facts can affect the result of the lawsuit through the

governing law.  Id.

The moving party's burden can be discharged by demonstrating the evidence

is lacking to sustain the non-moving party's claims.  Id. at 329-30.  In opposing the

summary judgment motion, the non-moving party cannot rely upon mere denials or

allegations, nor can they prevail by demonstrating a mere scintilla of proof to

support their position.  Id. at 330.  Alternatively, the non-movant is required under

Fed. R. Civ. P. 56 (2012) to show by affidavit or other means that there are definite

facts indicating there is an actual issue for trial.  Id. (citations omitted).

## II.   THE STIPULATIONS OF SETTLEMENT IN LIEU OF JUDGMENT WERE MISLEADING AND DECEPTIVE BECAUSE THEY CONFUSED PLAINTIFFS AS TO THEIR LEGAL RIGHTS AND VIOLATE THE FDCPA.

### A.    *The Least Sophisticated Debtor Standard*

The Third Circuit analyzes lender-debtor correspondence under the "least sophisticated debtor" standard. <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450, 453 (3d Cir. 2006). The primary goal of the least sophisticated debtor standard is to guarantee that the FDCPA guards every consumer, the gullible and shrewd. <u>Id.</u> This standard comports with the norms courts have typically used in consumer law. <u>Id.</u> "That it may be obvious to specialists or the particularly sophisticated that a given statement is false or inaccurate does nothing to diminish that statement's 'power to deceive others less experienced.'" <u>Id.</u> (citations omitted). "[O]ur laws 'are made to protect the trusting as well as the suspicious,' and this is particularly the case within the realm of consumer protection laws." <u>Id.</u>

The least sophisticated consumer standard demands more than merely determining if the specific language would fool the reasonable debtor since correspondence that would not fool a reasonable debtor could still deceive the least sophisticated debtor. <u>Id.</u> at 454. This lower guideline complies with the basic goal of the FDCPA which is to protect both gullible and shrewd consumers from abusive debt collectors. <u>Id.</u> The FDCPA, however, also precludes liability for bizarre interpretations of debt collection notices. <u>Id.</u> A basic level of comprehension and willingness to carefully read is presumed. <u>Id.</u>

The effectiveness of a notice under the FDCPA is resolved under the least sophisticated debtor standard. <u>Adams v. Law Offices of Stuckert & Yates</u>, 926 F.

Supp. 521, 527 (E.D. Pa. 1996) (citations omitted).  Typically, a validation rights notice has to be adequately big and noticeable for the debtor and cannot be overshadowed or contradictory to other statements by the debt collector.  Id.  The extraneous message is deemed contradictory or overshadowing if it would trigger the least sophisticated consumer to become unsure or confused as to his or her rights through the FDCPA.  Id.  "[I]f a notice is violative as to the protypical 'least sophisticated consumer,' it is violative as to all recipients, without a subjective inquiry into the sophistication of those recipients.  Macarz v. Transworld Sys., Inc., 193 F.R.D. 46, 51 (D. Conn. 2000).  Further, a law degree is no guarantee of sophistication or familiarity with the complex requirements of consumer law."  Id. (emphasis added).

    B.    *Plaintiffs Feared that a Judgment Would be Immediately Entered in Court Due to the Stipulations of Settlement in Lieu of Judgment*

Plaintiff Tawana Bledsoe, after being sued in state court by Defendants Forster, Garbus & Garbus and Glenn Garbus responded by filing a pro se answer, dated December 15, 2010. At this time, Plaintiffs Bledsoe also enclosed a request for proof of the alleged debt.

Approximately January 4, 2011, Plaintiffs received correspondence from Defendants who, instead of providing proof of the alleged debt -- as originally

8

requested in the pro se answer -- enclosed two (2) Stipulations of Settlement in Lieu of Judgment with two (2) payment plan options for Plaintiffs. Upon receipt of said Stipulations, Plaintiffs, who disputed the debt and had no recollection of the account, were confused and scared by these enclosures and the associated wording. In effect, Plaintiffs Bledsoe and Higgins strongly worried and felt fearful that if they did not sign and return one of the stipulations, they would have a judgment incurred against them.

In reality, Plaintiffs, who were defending themselves pro se, were wholly unaware of their legal rights since they had no formal legal training and, in the past, never had to deal with a legal situation like this one. With no knowledge of their rights, they also felt it was futile to attempt to defend themselves in the State Court Debt Collection Action, believing that Defendants would instead be able to obtain judgment against them if they did not sign and return one of the stipulations. Plaintiffs knew that hiring an attorney could be expensive; they were planning their wedding (which made matters even more stressful); and they felt confused because they did not owe the alleged debt.  In the meantime, during the course of the State Court Debt Collection Action, Defendants never produced any documentation or evidence of the alleged debt to the Plaintiffs, as requested by same, to prove their case in court.

C.     The Title "Stipulations of Settlement in Lieu of Judgment" Confuses
       and Causes the Least Sophisticated Consumer to Believe a Final
       Judgment is Imminent; Does Not Give the Impression that a Payment
       Plan Has Been Offered; and Made Plaintiff Bledsoe Believe that
       Disputing the State Court Debt Collection was Useless

Undoubtedly, the precise language of "In Lieu of Judgment" is provocative and such language was used for no other reason than to intimidate and allow Defendants to take advantage of the naiveté of Plaintiffs in order to gain leverage over same, since Defendants knew full well that Plaintiffs were representing themselves pro se, without the guidance of counsel. By using such terminology, they were hoping to scare, confuse, coerce, and even bully Plaintiffs into making payment on the alleged debt. The terms "In Lieu of Judgment," to the least sophisticated consumer -- or anyone without knowledge of such related legal matters or knowledge of their legal rights for that matter -- means "pay up now or there will be a judgment against you." In effect, such language would incite fear in anyone, even if the debt is not owed, since, for most people, just the thought of having to go to court and incur judgment is cause enough to pay on an account that is not owed.

Thus, it is not unreasonable to believe that Ms. Bledsoe as lay individual who did not go to law school would be confused and did not understand the more complex subject of a Stipulation of Settlement in Lieu of Judgment. It has been

10

held that even lawyers are not necessarily equipped to be familiar with the complexity of consumer law.  Macarz, 193 F.R.D. at 51.  As such, how can Plaintiffs be held to that standard as non-lawyers.  As defense counsel points out during the deposition, clearly Ms. Bledsoe was confused.  She did not even realize that she had been already sued.  She was fearful of being sued in the future.  Ms. Bledsoe's deposition testimony is evidence that is credible.  This evidence creates a genuine issue of material fact for the jury.

Moreover, Defendants never mentioned any legitimate reason(s) as to why such specific language as "In Lieu of Judgment" was utilized as part of their debt collection efforts.  As any attorney in civil litigation would know, stipulations do not normally contain provocative language similar to "In Lieu of Judgment."  Besides inflicting feelings of intimidation, there could be absolutely no other reason than to incorporate the use of such language.

In discovery, Plaintiffs' counsel asked for examples of other similar documents sent to other consumers in their collection actions and nothing similar has ever been provided as a part of their response; that same language was never utilized.  Defendants have yet to submit documentation showing that they forwarded this same paperwork to other consumers that were being represented by counsel. The fact that they would never forward such paperwork to consumers represented by counsel is simply more evidence that such language is used solely

for the purpose of confusing and scaring pro se defendants into paying on non-existent accounts.

## III.   THE INTENT OF THE FAIR DEBT COLLECTION PRACTICES ACT.

The FDCPA, 15 U.S.C. § 1692e (2012) states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."   The general prohibition is intended to cover deceptive collection acts and practices that do not fit the specific prohibitions given in the subsections of the section.  Congress recognized that it would be impossible to foresee every type of collection misbehavior and expressly provided this general standard to give the flexibility to proscribe conduct not specifically anticipated and addressed in the Act.

Congress included this general proscription in recognition of its inability to foresee every conceivable abusive debt collection method. According to a Senate report "this bill prohibits in general terms any harassing, unfair, or deceptive collection practice.  This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695.

This section borrows the legal concept of deception from the Federal Trade Commission Act ("FTC Act").  See 15 U.S.C. § 45 (2006); Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1173 (11th Cir. 1985).

Courts construing this section should find decisions and principles of construction under the FTC Act persuasive.   Since the FDCPA expressly recognized the inadequacy of existing laws, including the FTC Act, to protect consumers, 15 U.S.C. § 1692(b) (2012), the FDCPA idea of deception was intended to be more protective of consumers than the FTC Act.  See Jeter, 760 F.2d at 1173.

As the FDCPA makes clear, Congress enacted the Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692(e).   Congress was prompted by an interest arising from "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," and noted that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs and invasions of individual privacy."   15 U.S.C. § 1692(a) (2012); Yentin v. Michaels, Louis & Assoc., Inc., No. 11-0088, 2011 WL 4104675, at *7 (E.D. Pa. Sept. 15, 2011).

## IV. UPON APPLICATION OF THE FDCPA DEFINITIONS AND CASE LAW, PLAINTIFF SCOTT HIGGINS HAS STANDING TO SUE AS A CONSUMER BECAUSE HE IS PLAINTIFF TAWANA BLEDSOE'S HUSBAND.

Plaintiff Scott Higgins as Ms. Bledsoe's husband has standing to sue as a consumer under the FDCPA for Defendants' violations. It has been held that a spouse has standing to bring an FDCPA claim under 15 U.S.C. § 1692e even though there was no contract between the spouse and the debt collector. Yentin v. Michaels, Louis & Assocs., Inc., No. 11-0088, 2011 WL 4104675, at *17. The FDCPA explicitly defines a consumer as a spouse. See 15 U.S.C. § 1692c(d) (2012). In terms of communications between a consumer and a debt collector, a "consumer" means "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." Id. at § 1692c(d). "It would be strange indeed if spouses of consumers could not bring suit under the FDCPA, given that marital discord was in part the mischief that motivated Congress to adopt the Act." Yentin, No. 11-0088, 2011 WL 4104675, at *17 n.14.

By reading the plain language of the FDCPA, one notes that recovery is not solely limited to consumers. There is liability whenever a debt collector neglects to follow the FDCPA with regard to any person. 15 U.S.C. § 1692k(a) (2012); Cole v. Toll, No. 07-0590, 2007 WL 4105382, at *7 (E.D. Pa. Nov. 16, 2007). Under certain parts of the FDCPA, a plaintiff is required to be a "consumer" to

14

have a claim since those parts of the FDCPA defines failure to comply in terms of actions directed at a "consumer." Wenrich v. Cole, No. 00-2588, 2001 WL 4994, at *4 (E.D. Pa. Dec. 22, 2000). Furthermore, 15 U.S.C. § 1692e is not one of the sections requiring a plaintiff to be a "consumer" to have standing. Yentin, No. 11-0088, 2011 WL 4104675, at *17 n.13.

As Defendants have aptly pointed out in their brief, Plaintiffs have premised their Complaint upon 15 U.S.C. § 1692e. Moreover, Defendants in the instant action misrepresent the definition of a "consumer" under the FDCPA which explicitly defines a consumer as a spouse. See 15 U.S.C. § 1692c(d).

Upon application of the rule in Yentin decision and the definitions under the FDCPA, Scott Higgins is considered a consumer under the FDCPA. The facts in Yentin are directly analogous to the instant case. In Yentin, a spouse who did not have a direct contract with the debt collector sued for FDCPA violations. Here, Defendants argue that there was no contractual obligation between Scott Higgins and Plaintiff LVNV Funding, LLC in the State Court Debt Collection Action. Yet, it is clear that Scott Higgins has standing to sue for the FDCPA violations under the Yentin decision. As such, since both the statute and case law shows that Plaintiff Scott Higgins is a consumer under the FDCPA, judgment should respectfully not be entered in favor of the Defendants as to the entirety of Scott Higgins' claims. Scott Higgins should respectfully be considered a consumer.

## V.   DEFENDANTS DID NOT REVIEW THE DEBT BEFORE DEMANDING PAYMENT; THEREFORE, THE COMMUNICATION WAS A FALSE AND MISLEADING VIOLATION UNDER THE FDCPA.

In Clomon v. Jackson, the Second Circuit held that a mass-produced letter containing an attorney's name in the letterhead and his signature, where the attorney reviewed neither the consumer's file nor any particular dunning letter (other than form) before mailing, constituted a false and misleading communication in violation of 15 U.S.C. § 1692e.  See Clomon v. Jackson, 988 F.2d 1314, 1320, 1323 (2d Cir. 1993).

The Second Circuit allowed a major exception to these cases when it determined that a law firm's disclaimer would overcome the deceptiveness of a lawyer mass mailing collection letters without reviewing the underlying claim.  In Greco v. Trauner, Cohen & Thomas, L.L.P., the Court held a dunning letter on a collection law firm's letterhead was not deceptive where there was no attorney review of the claim and the letter stated:  "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.  However, if you fail to contact this office, our client may consider additional remedies to recover the balance due."  Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 361 (2d Cir. 2005).  In the instant action, Defendants' January 4, 2011 letter contained no such disclaimer.

16

## VI.  DEFENDANTS NEVER SENT THE VERIFICATION RIGHTS NOTICE IN VIOLATION OF 15 U.S.C. § 1692g.

The Text of 15 U.S.C. § 1692g(a) (2012) states that:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:

(1)  The amount of the debt;

(2)  The name of the creditor to whom the debt is owed;

(3)  A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)  A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)  A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g.

In the instant matter, Defendants never sent such a notice. Defendants concede that they contacted Plaintiff with the January 4, 2011 cover letter; however, they never provided the above-mentioned notice in discovery to refute Plaintiffs' claim. In other words, Defendants were mandated to send the

17

Verification Rights Notice to Ms. Bledsoe within five (5) days of the January 4, 2011 communication.  Said allegation was alleged in the Complaint and Plaintiffs' counsel brought this issue specifically to the attention of Defendants' counsel Glen Chulsky at the January 4, 2012 Telephone Conference. When asked about providing the Verification Notice, Mr. Chulsky just said "I don't know."  This was never provided in discovery, as were no other documents provided in discovery from Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs Tawana Bledsoe and Scott Higgins respectfully request that this Court deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

Dated:  New York, NY
         March 19, 2012

By:     /s/ Ana B. Alba

Ana B. Alba, Esq.
**ALBA LAW FIRM, P.C.**
110 Wall Street, 11th Floor
New York, NY  10005-3817
Tel.:  (212) 859-5080
E-mail:  AAlba@albalawfirm.net
*Attorneys for Plaintiffs Tawana Bledsoe*
  *and Scott Higgins*

Jason A. Shear, Esq.
**BRENT & SHEAR, P.C.**
3957 Main Street
Buffalo, NY  14226-3401
Tel.:  (716) 831-1111
E-mail:  JShear@brentandshearlaw.com
*Attorneys for Plaintiffs Tawana Bledsoe*
  *and Scott Higgins*